**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LELAND COPENHAGEN

                                    Plaintiff,

          - against -

DDC ENTERPRISE LIMITED, DDC US INC., and
YAI'S THAI, INC.,

                                 Defendants.

25 Civ. 2708 (RMB)

**DECISION & ORDER**

       Plaintiff Leland Copenhagen brought this breach of contract action against Defendants DDC Enterprise Limited ("DDC Enterprise"), DDC US Inc. ("DDC US") and Yai's Thai LLC. Plaintiff seeks damages in the amount of $235,136.91 for failure to meet certain obligations under an Employment Agreement, dated January 11, 2024 ("Employment Agreement"), and a Merger Agreement, dated December 23, 2023 ("Merger Agreement"). *See* ECF No. 20 ("First Amended Complaint" or "FAC"). Specifically, Plaintiff claims $207,692.31 in unpaid wages and severance pay and $27,444.60 in credit card expenses that Defendants failed to reimburse. Defendants DDC Enterprise and DDC US (collectively the "DDC Entities") now move to dismiss: (i) Plaintiff's expense reimbursement claim because Copenhagen has not incurred any damages and (ii) the entire action as against the DDC Entities because they were not parties to the Employment Agreement. **For the reasons that follow, the motion is granted to the extent that Plaintiff's expense reimbursement claim is dismissed and the motion is otherwise denied.**

## I.    BACKGROUND

       This case arises from the DDC Entities' 2024 acquisition of Yai's Thai. Copenhagen founded Yai's Thai in 2015. FAC ¶ 8. Between 2015 and 2023, Yai's Thai "expanded rapidly," developed "nationwide reach," and distributed its products in "major retailers," including

"Whole Foods, Walmart, and Costco." *Id.* at ¶ 9. In 2023, Copenhagen agreed to sell Yai's Thai to DDC US "in exchange for a combination of cash and shares in DDC Enterprise." *Id.* at ¶ 11.

### A. The Merger Agreement

To effectuate the sale of Yai's Thai, all parties (Copenhagen, Yai's Thai, DDC Enterprise, and DDC US) entered into the Merger Agreement on December 23, 2023. *Id.* at ¶ 12; *id.* Ex. A ("Merger Agreement"). Under the Merger Agreement, Yai's Thai was required to "deliver" to DDC US: (i) the "written resignations of all officers and directors" of Yai's Thai; and (ii) an employment agreement, signed by Copenhagen, "in form and substance satisfactory to [DDC US]." Merger Agreement § 2.16 (viii) (B–C).

Pursuant to the Merger Agreement, the DDC Entities agreed to make loans to Yai's Thai "equal to [Yai's Thai's] forecast of [its] working capital requirements" in 2024 and 2025. *Id.* § 5.07. The Merger Agreement provides that DDC Enterprise "absolutely, unconditionally and irrevocably guarantees, as primary obligor and not merely as surety, all of [DDC US] obligations here under[.]" *Id.* § 2.19.

### B. The Employment Agreement

"Yai's Thai . . . executed the Employment Agreement as agent of, and for the benefit of, its parent DDC US." FAC ¶ 51. "As part of the Merger, on January 11, 2024, Copenhagen executed the Employment Agreement." *Id.* ¶ 14; *id.* Ex. B ("Employment Agreement"). "The Employment Agreement was negotiated between Copenhagen and the DDC Entities . . . at a time when Yai's Thai . . . had no separate corporate identity from DDC US." FAC ¶ 49. "Yai's Thai . . . acted as a dummy and alter ego of DDC US." *Id.* The Employment Agreement was signed by Norma Chu (CEO of DDC Enterprise) for DDC US "as sole member of Yai's Thai, LLC." *Id.*

Under the Employment Agreement, Copenhagen "agreed to be employed by Yai's Thai as its CEO and President." *See* FAC ¶ 23; Employment Agreement at 1. As compensation, "Copenhagen's salary was set at $180,000 for each of 2024 and 2025." FAC ¶ 24; Employment Agreement §§ 3.1–3.3. Yai's Thai was also required to "reimburse [Copenhagen] for all necessary and reasonable out-of-pocket business expenses incurred by [him] which relate to [his] duties[.]" FAC ¶ 25; Employment Agreement § 4.2.

### C.  Yai's Thai Fails to Pay Copenhagen

Yai's Thai paid Copenhagen his salary through most of 2024. However, Yai's Thai "fail[ed] to make the final December 31, 2024, payment of $6,923.08," FAC ¶ 31, and thereafter "ceased paying Copenhagen the Salary to which he was entitled as it accrued." *Id.* ¶ 32. "On January 3, 2025, Copenhagen emailed Chu to inform her that payroll for Yai's Thai was 3 days late[.]" *Id.* ¶ 33. "Chu responded on January 7, 2025, and provided no answer as to when Yai's Thai might receive funding." *Id.* ¶ 36. Copenhagen further inquired on January 7, January 11, January 15, January 21, and January 27. *Id.* ¶ 37–39. On January 27, DDC Enterprise's Chief Legal Officer emailed Copenhagen, stating "that Chu was looking into the issue and would get back to Copenhagen." *Id.* ¶ 39. "Copenhagen has not heard anything from . . . Chu since that January 27 email." *Id.* ¶ 40. "Copenhagen resigned from Yai's Thai on February 27, 2025" by which point, "Yai's Thai had failed to pay Copenhagen for four pay periods." *Id.* ¶ 41.

"Prior to the Merger, Yai's Thai maintained a business credit card that was personally guaranteed by Copenhagen." *Id.* ¶ 44. "While DDC US was supposed to remove Copenhagen as guarantor from the Credit Card following the Merger, this did not occur, and Copenhagen remained guarantor." *Id.* ¶ 45. "To date, the Credit Card balance, inclusive of interest, is $27,444.60" in "business-related expenses." *Id.* ¶¶ 46–47. As of his resignation on February 27,

3

2025, Copenhagen "has been damaged in the amount of $235,136.91." *Id.* ¶ 44. Specifically, Plaintiff claims $27,692.31 in unpaid wages, $180,000 in unpaid severance pay, and $27,444.60 in unreimbursed credit card expenses. *Id.* ¶ 52–53.

### D. Procedural History

Plaintiff initiated this action by filing a complaint on April 1, 2025. ECF No. 1. Plaintiff filed his First Amended Complaint on July 14, 2025. The Merger Agreement and Employment Agreement are attached to the FAC as Exhibits A and B, respectively.

Defendants filed their motion to dismiss on July 25, 2025 (ECF No. 21), together with a memorandum of law (ECF. No. 23) ("Def. Br."). Defendants argue that "[t]he Complaint must be dismissed for the failure to state a legally-viable claim as against DDC Enterprise and DDC US because they are not parties to the Employment Agreement and have no obligation to Mr. Copenhagen thereunder" and that "Plaintiff's claim that the Defendants breached the Employment Agreement by not 'reimbursing' him for a credit card balance of $27,444.60 must be dismissed because Mr. Copenhagen's Complaint admits that he did not pay the credit card balance, but rather that the charges remain 'outstanding obligations.'" Def. Br. at 4–6.

Plaintiff filed his opposition brief on August 11, 2025 (ECF No. 25) ("Pl. Opp."). With respect to his credit card claim, Plaintiff "agrees with Defendants that [Plaintiff] cannot claim damages based on expenses [Plaintiff] has not yet incurred" and concedes that damages were "not alleged in the FAC." *Id.* at 1 n.1. Plaintiff otherwise opposes the motion to dismiss, arguing that "the DDC Entities . . . demonstrated their intent to be bound by the Employment Agreement." *Id.* at 5.

The Court held oral argument on the motion on December 3, 2025. At oral argument, Defendants noted that "the doctrine of manifesting and intent to be bound . . . would allow a

third party to be brought in and have liability on a contract that they didn't sign" but argued that here the parties "could have brought in DDC, as they did in the Merger Agreement, . . . but they didn't." 12/3/2025 Oral Arg. Tr. 9:8–18. Defendants urged, "That manifests not intent to be bound, but [rather] intent to preserve the corporate form and for the subsidiary to have a direct relationship and contractual relationship with Mr. Copenhagen as the CEO." *Id.* 9:18–21. Plaintiff argued that the motion to dismiss should be denied because "the case law strongly supports the notion that, at the pleading stage, [the DDC Entities'] negotiation of the contract, [their] sole control over Yai's Thai at the time of the contract, and [] the obligations that they have under the contract are strong suggestions of their intent to be bound . . . such that they can be held liable." *Id.* 5:10–16.

## II.    RELEVANT LEGAL STANDARD

"The Court's charge in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint." *Jennings v. Hunt Companies, Inc.*, 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004)). When considering a motion to dismiss, the Court must take as true the complaint's factual allegations. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The Court "may consider the facts alleged in the complaint [and] documents attached to the complaint as exhibits[.]" *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

Although a parent corporation "is not liable for the acts of its subsidiaries," *United States v. Bestfoods*, 523 U.S. 41, 61 (1998), "[a] non-signatory parent corporation can be held liable as a party to its subsidiary's contract if the parent's conduct manifests an intent to be bound by the contract." *Jennings*, 367 F. Supp. 3d at 71 (S.D.N.Y 2019). A plaintiff feasibly states a claim

5

based on "manifest intent" where the complaint alleges that "the subsidiary agreed to the contract under the parent's watch and control, parent company executives reviewed and approved it, and the parent would benefit from the contract." *Id.* at 71 (citing *TransformaCon, Inc. v. Vista Equity Partners, Inc.*, 2015 WL 4461769, at *5 (S.D.N.Y. July 21, 2015)).

### III.    ANALYSIS

#### A.  Plaintiff's Breach of Contract Claim Against DDC Enterprise and DDC US

The DDC Entities contend that they "are non-parties to the Employment Agreement" and therefore "have no obligation to Mr. Copenhagen thereunder." Def. Br. at 1. The DDC Entities assert that the Employment Agreement is a "fully integrated contract" and "clearly and unambiguously provides that the only parties thereto are Mr. Copenhagen and [Yai's Thai]." *Id.*

Plaintiff responds that the "DDC Entities' Motion to dismiss all claims against themselves rests on the mistaken notion that a third-party to a contract may never" manifest intent to be bound. *See* Pl. Opp. at 1–2. Plaintiff argues that the DDC Entities "negotiated the Employment Agreement directly with Copenhagen, drafted it, and caused it to be executed by Yai's Thai at a time when Yai's Thai was solely controlled by DDC US." *Id.* Plaintiff contends that "these actions expose the DDC Entities to liability under the Employment Agreement." *Id.*

Plaintiff is correct. *See, e.g.*, *Jennings*, 367 F. Supp. 3d at 72 (citing *SHLD, LLC v. Hall*, 2016 WL 659109 (S.D.N.Y. Feb. 17, 2016)) ("finding a manifest intent to be bound where the parent company's ownership and management—which was common with the subsidiary—used the parent entity to negotiate a contract with the plaintiffs").

Plaintiff alleges that when the Employment Agreement was executed, Yai's Thai was "completely dominated and controlled by DDC US, such that they were mere instrumentalities of DDC US." FAC ¶ 20. Yai's Thai entered into the Employment Agreement with Plaintiff

exclusively at the "direction of DDC." Pl. Opp., at 4; FAC ¶ 17. Plaintiff alleges that "all of the officers and directors of Yai's Thai had resigned pursuant to the requirements of the Merger Agreement, such that [DDC US] exercised control over everyday operations at Yai's Thai." FAC ¶ 18. "DDC US became the *only* member of Yai's Thai," *Id.* (emphasis added), such that, **Norma Chu, CEO of DDC Enterprise, "executed the Employment Agreement on behalf of DDC US."** Pl. Opp. at 2.

DDC not only demonstrated "watch and control" over Yai's Thai during contract negotiation, *see Ghost in the Mach. Inc. v. Planned Parenthood Fed'n of Am., Inc.*, 2025 WL 252913 (S.D.N.Y. 2025), DDC **"negotiat[ed] the Employment Agreement with Copenhagen directly and caus[ed] it to be executed by Yai's Thai at a time when DDC US had sole control over Yai's Thai."** Pl. Opp. at 7. At the time of execution, "Yai's Thai did not have any officers or directors of its own . . . such that the distinction between the DDC Entities' desire for Yai's Thai to act and Yai's Thai's agreement to act [was] functionally meaningless." *Id.* The fact that the DDC Entities agreed fund the "working capital requirements" of Yai's Thai, further reinforces the DDC Entities' authority over Yai's Thai. *See Jennings*, 367 F. Supp. 3d at 72 (finding manifest intent where the parent company's officers "assured Plaintiff that [parent] was prepared to provide Plaintiff with whatever resources he needed to start and run [the subsidiary]").

For these reasons, Plaintiff's adequately pleads that "DDC manifested an intent to be bound by the Employment Agreement." Pl. Opp. at 7.

### B.  Plaintiff's Expense Reimbursement Claim

The DDC Entities also move to dismiss, as against all Defendants, "Plaintiff's claim that the Defendants breached the Employment Agreement by not 'reimbursing' him for a credit card

balance of $27,444.60." Def. Br. at 6. In his opposition brief, Copenhagen "agrees with Defendants that [Copenhagen] cannot claim damages based on expenses Copenhagen has not yet incurred." Pl. Opp. at 1 n.1. Plaintiff notes in his opposition brief that he "has made interest and limited principal payments" and that "the presence of this debt on Copenhagen's credit report complicates his ability to obtain credit in the future." *Id.* However Copenhagen concedes that these damages are "not alleged in the FAC." *Id.* At oral argument, Defendants mentioned Plaintiff's "claim about unpaid corporate expenses on a Credit Card." 12/3/2025 Oral Arg. Tr. 11:8–10. Plaintiff did not address the expense reimbursement claim at oral argument. *See id.*

"To state a valid claim for breach, Plaintiff must allege valid damages." *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 469 (S.D.N.Y. 2016) (dismissing breach of contract claim) (citing *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011)). Because Plaintiff fails to allege damages related to his expense reimbursement claim (as Plaintiff himself concedes), that claim is dismissed as to all Defendants. *See id.*; *see also Napster, LLC v. Rounder Records Corp.*, 761 F. Supp. 2d 200, 206, 208-09 (S.D.N.Y. 2011) (dismissing breach of contract claim for failure of a condition precedent).

## IV.    CONCLUSION & ORDER

For the reasons stated above, the DDC Entities' motion to dismiss is **denied** as to Plaintiff's breach of contract claim against DDC Enterprises and DDC US and **granted** as to Plaintiff's expense reimbursement claim against all Defendants. Plaintiff's expense reimbursement claim is dismissed.

The Clerk of Court is respectfully instructed to close the motion at ECF No. 21.

Date: March 31, 2026
New York, New York

_____
**RICHARD M. BERMAN, U.S.D.J.**